IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

---

| | | |
|---|---|---|
| TRACEY R. GODFREY, | ) | Cause No. CV 09-35-M-DWM-JCL |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| MIKE MAHONEY; ATTORNEY | ) | (Claims A1, A2, B2, C, D2, E1, and E2) |
| GENERAL OF THE STATE OF | ) | |
| MONTANA, | ) | |
| | ) | |
| Respondents. | ) | |

---

On March 16, 2009, Petitioner Godfrey filed this action under 28 U.S.C. §

2254. Godfrey is a state prisoner proceeding pro se and in forma pauperis.

On June 1, 2009, Godfrey was ordered to show cause why four of his claims

should not be dismissed as procedurally defaulted. At the same time, Respondents

were ordered to file an Answer to five of Godfrey's claims, A1, A2, B2, D2, and E1.

No action was required as to Claims C and E2. Only those claims that the State was

required to answer are dealt with here.

## I. Proceedings in State Court

On November 15, 1999, Godfrey was charged in Montana's Twenty-Second Judicial District Court, Ravalli County, with two counts of sexual assault against his niece, K.M. Count 1 was alleged to have occurred in the summer of 1999, Count 2 in October 1999. Count 2 was later amended to add a charge of attempted sexual intercourse without consent. Pet. (doc. 4) at 2 ¶ 1; State Ex. C1 at 5.[1] Mark McLaverty represented Godfrey.

On April 14, 2000, McLaverty, prosecutor Geoffrey Mahar, and defense investigator Jeff Patterson interviewed the victim, K.M., who was eight years old at the time of the alleged incidents. The interview was tape-recorded, but the tape did not work. Godfrey alleges that McLaverty and Patterson told him that K.M. responded to a question about whether she was mistaken about the October 1999 incident by saying, "I probably am wrong." State v. Godfrey, 203 P.3d 834, 837 ¶ 15 (Mont. 2009) ("Godfrey II"); State Ex. E1 at 5; State Ex. E2 at 5 (Patterson's billing statement), 6-7 (notes re: interview of Patterson).

---

[1] Except for references to the trial transcript, which provide the specific page and line numbers of the transcript, page numbers are CM-ECF page numbers. CM-ECF numbers each document sequentially; the cover page is always page one. The State's exhibits are attached to its Answer (doc. 23).

Trial commenced on April 24, 2000. Godfrey testified. On cross-examination, the prosecutor asked him whether he had given anyone else before trial the explanation of events he related in his trial testimony. The prosecutor returned to this point in his closing argument. Defense counsel made no objection. State v. Godfrey, 95 P.3d 166, 170 ¶¶ 18-19 (Mont. 2004) ("Godfrey I").

Deliberations began on April 25 and continued on the 26th. The jury sent out eleven inquiries, mostly for specific segments of transcribed testimony. The trial court met with counsel to respond to the jury's requests. Godfrey was not personally present at these conferences. The jury deliberated for nearly twice as long as the trial itself. It acquitted Godfrey of the charge arising in the summer of 1999. With respect to the October 1999 incident, it acquitted him of attempted rape and convicted him of sexual assault. Pet. at 2 ¶ 3; Godfrey I, 95 P.3d ¶ 20; Godfrey II, 203 P.3d at 838 ¶ 23.

On July 24, 2000, Godfrey was sentenced to serve thirty years on Count 2, ten consecutive years as a persistent felony offender, and one year on an unrelated DUI revocation, for a total of forty-one years in prison. On November 29, 2000, the Sentence Review Division of the Montana Supreme Court amended Godfrey's sentence to sixty years, with thirty years suspended. Godfrey I, 95 P.3d at 170 ¶ 21;

Appellant Br. at 2, <u>Godfrey</u>, No. 01-890.

Godfrey appealed, represented by new counsel. He raised one claim, alleging that the prosecutor's closing argument and questions of him on cross-examination violated his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), and <u>Doyle v. Ohio</u>, 426 U.S. 610 (1976). On July 28, 2004, the Montana Supreme Court affirmed Godfrey's conviction. <u>Godfrey I</u>, 95 P.3d at 174 ¶ 40.

On September 9, 2004, Godfrey filed a pro se petition for postconviction relief in the trial court. Appellant Br. at 16, <u>Godfrey v. State</u>, No. DA 06-0064 (Mont. filed Jan. 24, 2007). He alleged that the prosecution failed to disclose exculpatory evidence, viz., the pretrial interview in which K.M. stated, "I probably was wrong"; that McLaverty was ineffective and violated his rights under the Confrontation Clause by failing to ask K.M. the same questions that elicited the pretrial recantation; that McLaverty was ineffective for failing to object to the prosecution's cross-examination and closing argument based on <u>Miranda</u> or <u>Doyle</u>; that he was deprived of his right to be present at a critical stage of the proceeding when he was not included in the conferences regarding jury questions; and that he was denied counsel at his resentencing following the Sentence Review Division's decision. He also moved for an evidentiary hearing, discovery, and an order directing the prosecution to disclose

its notes from K.M.'s pretrial interview. The trial court denied his motions and dismissed the petition. <u>Godfrey II</u>, 203 P.3d at 836 ¶ 8.

On postconviction appeal, represented by new counsel, Godfrey reasserted his first four claims and contended that appellate counsel was ineffective for failing to raise a claim that the jury did not "meaningfully pay attention to the parties' presentation of the evidence." <u>Id.</u> at 835 ¶¶ 2-6.

The Montana Supreme Court declined to hear Godfrey's first two claims because Godfrey's petition and attached exhibits, while proving that the pretrial interview occurred, did not prove that K.M. said "I probably was wrong." <u>Id.</u> at 837 ¶ 17 (citing Mont. Code Ann. § 46-21-104(1)(c)). The Montana Supreme Court also declined to hear Godfrey's claim of ineffective assistance of appellate counsel on the grounds that Godfrey did not raise that claim in his petition to the trial court. <u>Id.</u> at 841-42 ¶ 42. The other claims were denied on the merits. <u>Id.</u>. at 837-41 ¶¶ 18-38. On March 3, 2009, the Montana Supreme Court affirmed the trial court's denial of postconviction relief.

Godfrey, acting pro se, submitted a petition for rehearing. The petition was not filed because he was represented by counsel. Am. to Pet. Attachment (doc. 8 #1) at 1.

Godfrey timely filed his federal petition on March 16, 2009. 28 U.S.C. § 2244(d)(1)(A), (2).

## II. Godfrey's Allegations

Godfrey's claims have been reorganized and relabeled to group similar claims together. Seven are at issue here. Godfrey contends that his right to remain silent was violated when the prosecutor cross-examined him and again by the prosecutor's closing argument ("Claim A1"). Pet. (doc. 4) at 4 ¶ 15A. He also claims that his trial counsel was ineffective for failing to object to these errors ("Claim A2"). Id. at 6 ¶ 15E. Second, he alleges that appellate counsel was ineffective for failing to argue that the jury was inattentive ("Claim B2"). Id. at 4 ¶ 15B. Third, he claims that the prosecutor withheld exculpatory evidence of K.M.'s recantation in a pretrial interview ("Claim C"). Id. at 5 ¶ 15D. Fourth, he asserts that trial counsel was ineffective for failing to ask at trial the question that elicited K.M.'s recantation in a pretrial interview ("Claim D2"). Id. at 7 ¶ 15F. Fifth, he claims that he was denied his right to "self-representation" when he was not included in six in-chambers conferences addressing jury questions ("Claim E1"), id. at 8 ¶ 15G, and when the Montana Supreme Court refused to file his pro se petition for rehearing because he was represented by counsel ("Claim E2"), Am. to Pet. (doc. 8) at 1 ¶ 15J.

**III. Analysis**

**A. Claim A**

Although Godfrey is not entitled to federal habeas relief unless he meets certain stringent standards, 28 U.S.C. § 2254(d), it is more efficient here to simply address Claims A1 and A2 on the merits.

**1. Claim A1**

Following is the exchange to which Godfrey objects. It begins with the State's first question on cross-examination:

> Q.    Mr. Godfrey, you are – About how old are you?
>
> A.    I'll be 35 December 15.
>
> Q.    Old enough to have explanations for certain events; isn't that right?
>
> A.    I'm not following you.
>
> Q.    Well, you have an explanation for what took place in October in your bus, don't you?
>
> A.    That's the truth.
>
> Q.    And you have another explanation for what took place in the summer of '99 in the bus, don't you?
>
> A.    Yes.
>
> Q.    Okay. And it's been nearly seven months since the

time of that initial search warrant, hasn't it been?

A.     Yes.

Q.     So, you had seven months to think up an explanation, isn't that true?

A.     I didn't think nothing up. I'm telling the truth.

Q.     And this is the first time that anyone has really heard this explanation, isn't that correct?

A.     No, it's not.

Ex. A3 at 248:16-249:249:14. Godfrey later volunteered, "If [S.M.] wanted an explanation, all she had to do was ask me. I would have told her what happened." Ex. A3 at 267:11-13.

In closing argument, the prosecutor returned to this theme:

[Godfrey] knew it was always going to be his word or my word type of thing. He always knew that. He's not a dummy. You saw him testify. He articulates well. He's got an explanation. He's had plenty of time to think about it.

Ex. A3 at 303:1-7.

The prosecutor commented on Godfrey's pretrial silence, but comment on a defendant's silence does not, by itself, establish a constitutional violation.

The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Am. V. The States are

bound to honor this guarantee. <u>Malloy v. Hogan</u>, 378 U.S. 1, 8 (1964). The Fifth Amendment prohibits government agents from compelling incriminating answers to their questions, "whether the compulsion [is] applied in a judicial proceeding or otherwise." <u>Ziang Sung Wan v. United States</u>, 266 U.S. 1, 15 (1924) (citing <u>Bram v. United States</u>, 168 U.S. 532 (1897)), <u>quoted in</u> <u>Miranda v. Arizona</u>, 384 U.S. 436, 462 (1966). Therefore, the Fifth Amendment reaches "informal compulsion exerted by law-enforcement officers during in-custody questioning." <u>Miranda</u>, 384 U.S. at 461, even before the initiation of a formal proceeding in court.

A <u>Miranda</u> warning is the means of protecting a person's Fifth Amendment privilege against the "inherently compelling pressures . . . of in-custody interrogation." <u>Id.</u> at 467. Once a <u>Miranda</u> warning is given, the prosecution may not introduce in its case-in-chief evidence that a defendant remained silent in response to custodial interrogation by government agents. <u>Id.</u> at 467-68 & n.37. Nor may it impeach a defendant who chooses to testify at trial with evidence that he remained silent in response to questioning by government agents. <u>Doyle v. Ohio</u>, 426 U.S. 610, 616-17 (1976). To use <u>Mirandized</u> silence in either situation would fly in the face of the warning itself, which tells a defendant he has a right to remain silent. "[I]t is fundamentally unfair to promise an arrested person that his silence will not be used

against him and thereafter to breach that promise." <u>Wainwright v. Greenfield</u>, 474

U.S. 284, 292 (1986).

Questioning by agents of the State is an indispensable element of the Fifth

Amendment and of <u>Miranda</u> and its progeny.  There is no evidence in the record

before this Court that Godfrey exercised his right to remain silent in response to

questioning by a government agent before trial.  At trial, no one suggested or implied

that Godfrey was questioned by police on any occasion.  <u>E.g.</u>, State Ex. A2 at 129:8-

129:21; 135:7-16, 244:4-246:3, 317:11-318:7.  The prosecutor did not compare

Godfrey's statements in his testimony on direct examination with his response or lack

of response to pretrial questioning by police.  Consequently, there is no factual basis

for a <u>Miranda</u> or <u>Doyle</u> claim.  Godfrey's Fifth Amendment privilege against

compulsory self-incrimination was not implicated before trial.

At trial, Godfrey waived his Fifth Amendment privilege by choosing to testify.

At that point, there was nothing compulsory about the prosecutor's questioning of

him.  He was subject to cross-examination like any other witness.  The mere fact that

he was the defendant in the case did not render his pretrial silence off-limits to the

prosecution.

> It can be argued that a person facing arrest will not remain silent if his
> failure to speak later can be used to impeach him.  But the Constitution

does not forbid every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights. The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved. The Raffel Court explicitly rejected the contention that the possibility of impeachment by prior silence is an impermissible burden upon the exercise of Fifth Amendment rights. We are unable to see that the rule that an accused who testifies must testify fully, adds in any substantial manner to the inescapable embarrassment which the accused must experience in determining whether he shall testify or not.

Jenkins v. Anderson, 447 U.S. 231, 236-37 (1980) (following Raffel v. United States, 271 U.S. 494 (1926)) (internal quotation marks, citations, and alterations omitted).

No doubt Godfrey had to make a tough choice. He could choose to remain silent at trial, thus leaving the jury with no alternative explanation for his actions. Or he could testify to give his side of the story, but in doing so, he would also subject himself to cross-examination and the prosecutor's implication that Godfrey made up his explanation after the fact. Every defendant who faces trial faces a similar difficult choice. There was no federal constitutional violation. Claim A1 should be denied.

### 2. Claim A2

Strickland v. Washington, 466 U.S. 668 (1984), sets the standards with respect to claims alleging ineffective assistance of counsel. First, Godfrey must show that counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. Second, he must show that he was prejudiced by counsel's errors. Id. at 693.

Under the first prong, counsel's performance need not be perfect. It must, however, fall "within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970)). Under the prejudice prong, Godfrey must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "[T]here is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Counsel had no basis in federal law to object to the prosecutor's questions or argument. Counsel's failure to object under state law can violate his client's federal right to effective assistance, Rupe v. Wood, 93 F.3d 1434, 1444-45 (9th Cir. 1996), but Godfrey has not identified any basis in state law that might have supported an objection. The Montana Supreme Court's analysis of the Miranda/Doyle issue might be considered a holding of state law, but Godfrey cannot show prejudice because the Montana Supreme Court found no merit in the claim. Godfrey II, 203 P.3d at 838 ¶ 21. Claim A2 should be denied.

**B. Claim B2**

The Strickland standards apply to claims of ineffective assistance of appellate counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000).

Godfrey's claim that the jury was inattentive was supported only by the facts that the jury took a long time to deliberate, asked many questions, and requested many excerpts of the testimony. The meaning of these facts is not in the trial record. The facts support a characterization of the jury as extremely attentive, careful, and engaged at least as well as they support a characterization of the jury as inattentive. They may be explained by saying that the jury had a hard time deciding whether Godfrey was guilty, or they may be explained by saying that the jury had a hard time deciding whether Godfrey was guilty of sexual assault or the greater offense of attempted rape.

Without some additional evidence in the record to support Godfrey's characterization of the jury as "inattentive," there is no reasonable probability that the Montana Supreme Court would have granted him a new trial. Therefore, he cannot show prejudice under Strickland. Further, appellate counsel is confined to the record at trial and has no opportunity to introduce additional evidence. Godfrey also cannot show deficient performance under Strickland. Claim B2 should be denied.

**C. Claim C**

Godfrey claims that the prosecutor, defense counsel, and the trial judge "suppressed" evidence that the victim recanted in a pretrial interview because they all failed to advise the jury of the recantation. Pet. at 5 ¶ 15D. Although the prosecution has a duty to disclose exculpatory information to defense counsel, Brady v. Maryland, 373 U.S. 83, 87 (1963), neither the prosecutor nor the judge has a duty to advise the jury of exculpatory evidence. Godfrey says defense counsel was present at the interview, e.g., State Ex. E1 at 5, so there was no suppression.

To the extent this claim might be construed to allege that defense counsel was ineffective for failing to present K.M.'s recantation to the jury, it is subsumed in Claim D2. Claim C should be denied.

**D. Claim D2**

This claim was dismissed by the Montana Supreme Court on a procedural ruling that Godfrey's affidavit was not sufficient to establish, by a preponderance of the evidence, the facts he alleged in his postconviction petition. Godfrey II, 203 P.3d at 837 ¶¶ 16-17.

**1. Procedural Bar**

Mont. Code Ann. § 46-21-104(1)(c) (2005) requires that postconviction petitions be supported by "attached affidavits, records, or other evidence establishing

the existence of those facts" alleged as a basis for relief. Godfrey attached his own affidavit to his postconviction petition. He averred that McLaverty and Patterson told him, before trial, that they and prosecutor Mahar interviewed K.M. on April 14, 2000. He also alleges that, when asked if she could be mistaken about what happened in October 1999, K.M. said, "I probably am wrong." McLaverty did not attempt to impeach K.M. at trial with her prior inconsistent statement. Godfrey also stated that McLaverty and Mahar "conspired to suppress the exculpatory evidence." Godfrey II, 203 P.3d at 837 ¶ 15; State Ex. E1 at 5-7, 43, 47 (postconviction petition).

The Montana Supreme Court affirmed the trial court's dismissal of the claim without requiring an answer by the State and without an evidentiary hearing:

> [T]he only evidence of the alleged recantation is found in Godfrey's affidavit. As the [trial court] noted, Godfrey did not attach affidavits from either McLaverty or Patterson, his defense team, who could have corroborated his affidavit. Thus, Godfrey's petition fails to point to any evidence that would support his assertion that K.M. recanted.

Godfrey II, 203 P.3d at 837 ¶ 16.

Conditioning the assertion of a claim of ineffective assistance of counsel on accused counsel's cooperation is destined to insulate from review the performance of those lawyers who are unscrupulous, or inattentive, or incompetent, or defensive, or busy. Practically all lawyers fall into the last category. Few fall into the first four,

but they are the ones against whom clients most need to assert claims.

"[I]f a state procedural rule frustrates the exercise of a federal right, that rule is 'inadequate' to preclude federal courts from reviewing the merits of the federal claim." Hoffman v. Arave, 236 F.3d 523, 531 (9th Cir. 2001) (holding 45-day postconviction statute of limitations inadequate to preclude federal review). To require a person alleging ineffective assistance of counsel to obtain an affidavit from counsel admitting the facts constituting ineffectiveness plainly frustrates attempts to vindicate the Sixth Amendment right to effective assistance. In addition, this Court is not aware of any other case, nor does the State suggest any, where the Montana Supreme Court has required an affidavit from counsel or a defense investigator to support a postconviction petition's allegation of facts underlying a claim of ineffective assistance of counsel. The rule is not, therefore, "firmly established" or "consistently applied." Collier v. Bayer, 408 F.3d 1279, 1284 (9th Cir. 2005). As applied in this case, Mont. Code Ann. § 46-21-104(1)(c) is not adequate to preclude federal review.

### 2. Conspiracy Claim

Godfrey requested and was denied an evidentiary hearing in state court. He undertook "his own diligent search for evidence," attached that evidence to his

postconviction petition, and made a "reasonable attempt, in light of the information available at the time, to investigate and pursue [his] claim[] in state court." Williams v. Taylor, 529 U.S. 420, 435 (2000). He established as many of the facts as were within his ability to reach. And he appealed the trial court's denial of his motions for production, discovery, and a hearing. He was diligent and did not "fail[] to develop the factual basis of [this] claim in State court proceedings," 28 U.S.C. § 2254(e)(2). Consequently, he is not required to meet the criteria of subsection (e)(2). Williams 529 U.S. at 430.

Nonetheless, Godfrey is entitled to a hearing only if he alleges facts that are not contradicted by the record and that, if true, would entitle him to relief. Gonzalez v. Pliler, 341 F.3d 897, 903 (9th Cir. 2003). When a petitioner's allegations are contradicted by the record of the case, he does not "'state a claim to relief that is plausible on its face.'" Iqbal v. Ashcroft, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). Further, a habeas petitioner must "set out substantive facts that will enable the court to see a real possibility of constitutional error." Aubut v. State of Maine, 431 F.2d 688, 689 (1st Cir. 1970), cited in Calderon v. United States District Court ("Nicolaus"), 98 F.3d 1102, 1106 (9th Cir. 1996). Federal habeas relief

is not a device to be used by prisoners "who seek to explore their case in search of its existence." Nicolaus, 98 F.3d at 1106 (quoting Aubut, 431 F.2d at 689).

Godfrey's allegation that McLaverty "conspired" with Mahar simply is not compatible with McLaverty's performance at trial. If the object of the conspiracy was to convict Godfrey, State Ex. E1 at 47, why would "Mark McLaverty and Jeff Patterson (P.I.)" have "informed Godfrey immediately after this interview" that K.M. said "'I probably was wrong'"? State Ex. E1 at 5. Why would McLaverty have mentioned on the record at trial the fact that he interviewed K.M. before trial, State Ex. A2 at 196:11-14? The conspiracy allegation is patently false.

### 3. Ineffective Assistance Claim

The remaining allegation is that counsel was ineffective for failing to ask at trial the same question that, in the pretrial interview, K.M. answered by saying "I probably was wrong." Even assuming she said what Godfrey says she said, State Ex. E1 at 5, her statement does not support either relief or, short of that, an evidentiary hearing.

To prove attempted sexual intercourse without consent, the State had to prove that Godfrey penetrated K.M.'s vulva or anus for the purpose of sexual gratification.

Mont. Code Ann. §§ 45-2-101(67)(a), -5-503(1) (1999).[2] "[A]ny penetration, however slight, is sufficient" to commit the offense. Id. § 45-2-101(67)(b). To prove attempt, the State had to prove that, "with the purpose to commit a specific offense" – that is, sexual intercourse without consent – Godfrey performed "any act toward the commission" of the offense. Id. § 45-4-103(1). To prove sexual assault, the State had to prove that Godfrey subjected her to sexual contact for the purpose of sexual gratification. Id. §§ 45-2-101(66), -5-502(1).[3] It made no difference in any of the charges whether Godfrey used his penis or his hand.

Despite discrepancies among K.M.'s statements as to whether Godfrey used his penis or his hand – discrepancies of which the jury was aware – all of the testimony in the State's case-in-chief showed that he touched K.M.'s genital or anal area. K.M. told Lucy Salazar that Godfrey put his hand in her night pants. State Ex. A3 at 218:14-23. Salazar told Detective Clarkson that she asked K.M. whether Godfrey "touched her privates," and K.M. responded, "[N]ot all the way, but his hands were

---

[2] The purposes causing the victim humiliation or harm are also included in the statute, but they are not implicated by the facts of the case.

[3] Lack of consent was established by K.M.'s age. Mont. Code Ann. § 45-5-501(1)(b)(iii). Except the attempt statute, each of the pertinent statutes was amended in 1999. 1999 Mont. Laws ch. 84 §§ 1-2, ch. 288 § 1, ch. 523 § 4 (eff. Oct. 1, 1999). K.M. stayed overnight with Godfrey on October 1-2, 1999. Thus, the 1999 Code applies to the October 1999 incident. In light of the testimony and Godfrey's claim, the amendments make no difference in the case.

down there." State Ex. A3 at 224:12-20. K.M. told her mother that she felt Godfrey's "private parts," not his hand, and she told Detective Potter that as well. State Ex. A2 at 140:5-141:6, 162:17-163:22. She also told Detective Potter that "he was doing it to me," id. at 132:2-12, and she was afraid she was going to have a baby, id. at 138:11-18. At trial, she testified that Godfrey was "scooting me close to his private" and holding her waist with both hands. Id. at 188:20-189:21. She did not remember telling Salazar that she told Godfrey "it hurts" or that he responded, "It's supposed to hurt," id. at 198:1-13, but Salazar testified that K.M. told her that, State Ex. A3 at 219:17-218:8. Godfrey's theory about the October 1999 incident was not that any witness was lying, merely that they were mistaken in their interpretation of events. State Ex. A2 at 106:15-24 (explaining, in opening statement for the defense, what the evidence will show).[4] Even if review is restricted to the evidence presented in the State's case-in-chief, there is no reasonable probability that the jury would have taken K.M.'s alleged statement, "I probably was wrong," to mean that Godfrey did not even *touch* her.

With the element of contact established, there were two central questions for

---

[4] McLaverty said in his opening statement that Godfrey would testify. State Ex. A1 at 104:20. At that time, Godfrey knew of the pretrial interview in which K.M. said, "I probably was wrong." He still chose to testify. Therefore, there is no reason to believe that Godfrey was forced to testify because of McLaverty's cross-examination of K.M.

the jury. First, as to all charges, did Godfrey act for the purpose of sexual gratification, or did he have an innocent purpose? Second, if his purpose was sexual gratification, did he attempt to penetrate K.M., or did he intend only to have sexual contact with her? Both questions involved Godfrey's intent. Both had to be answered by the jury's drawing of reasonable inferences from the acts described.[5] Before Godfrey testified, the only reasonable inference to draw from the evidence and testimony was that Godfrey touched K.M. for the purpose of sexual gratification. Godfrey testified that he was trying to determine whether she had wet herself. State Ex. A3 at 241:11-13. Ultimately, the jury had to weigh Godfrey's testimony and decide whether it believed *him*.

K.M.'s statement, "I probably was wrong," might have made a difference in the jury's decision between attempted rape and sexual assault, but Godfrey was not convicted of attempted rape. There is no reasonable probability that the jury would have *acquitted* Godfrey if only K.M. had repeated her statement, "I probably was wrong." He undoubtedly touched her. She did not testify about his intent, and the jury rejected his own version of what he intended. Therefore, Godfrey cannot show

---

[5] K.M. did not say that Godfrey said anything at the time about what he was doing, and she testified that he did not try to dissuade her from telling anyone what happened. State Ex. A3 at 204:11-16, 207:8-19.

prejudice from McLaverty's failure to elicit K.M.'s alleged statement. He is not entitled to relief or to an evidentiary hearing to determine whether she said what he says she said. Claim D2 should be denied.

**E. Claim E1**

This claim was decided on the merits by the Montana Supreme Court. The facts are set forth in Godfrey's opening brief on postconviction appeal. State Ex. G1 at 15-18. Again, it is more efficient to address the merits directly.

Federal habeas relief is not available for errors of state law. Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Nunes v. Ramirez-Palmer, 485 F.3d 432, 443 (9th Cir. 2007).

Godfrey identifies the right at issue in this claim as the right to "self-representation" at "six in-chambers conferences while the jury was in deliberations." Pet. at 8 ¶ 15G & G(1). Godfrey's counsel was present at those conferences. A defendant who is represented by counsel and has not unequivocally requested to proceed without counsel has not asserted his right to self-representation. The federal right to counsel and the federal right to self-representation are mutually exclusive. Adams v. Carroll, 875 F.2d 1441, 1444 (9th Cir. 1989). Therefore, Godfrey's claim must take the form of a contention that he was entitled to be present in person, not

merely through counsel, when the court and the parties were discussing how to respond to the jury's questions.

There is no categorical federal right to be present in person to respond to jury questions. In <u>Rushen v. Spain</u>, for instance, a judge responded to questions from a juror off the record and without advising counsel of the question, much less giving counsel input into the response or ensuring the defendant was present in person. The Supreme Court assumed, without deciding, that the judge's ex parte communication with the juror violated the Constitution. 464 U.S. 114, 117-20 & n.2 (1983) (per curiam). It did not even consider whether the defendant had a right to be personally advised. It also held that the defendant showed no prejudice from the purported violation. <u>Id.</u> at 120-21. <u>See also</u> <u>Gonzalez v. United States</u>, __ U.S. __, 128 S. Ct. 1765, 1773-74 & n.1 (2008) (Scalia, J., concurring) ("[E]xcept for one line of precedent, no decision of this Court holds that, as a constitutional matter, a defendant must personally waive certain of his 'fundamental' rights – which typically are identified as the rights to trial, jury, and counsel. The exceptional line of precedent involves the right to counsel.").

The Court is not aware of any federal case holding that a defendant must be present in person, not merely through counsel, to respond to jury questions. The

"privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow,'" <u>Kentucky v. Stincer</u>, 482 U.S. 730, 745 (1987) (quoting <u>Snyder v. Massachusetts</u>, 291 U.S. 97, 106-07 (1934)); <u>see also</u> <u>United States v. Rosales-Rodriguez</u>, 289 F.3d 1106, 1110 (9th Cir. 2002). Therefore, to show that he was guaranteed a right to be present in person, and not merely through counsel, Godfrey must show that his own personal presence, beyond counsel's representation of him, "would contribute to the fairness of the procedure." <u>Id.</u> at 745. He must make that showing based on a review of the record in its entirety, including the questions the jury actually asked, State Ex. G1 at 15-18.

Godfrey does not refer to anything he could have said or done to alter the situation. He does not identify any respect in which his own participation would have made the trial court's manner of handling the jury's questions more fair. In his postconviction appeal, Godfrey specifically argued that "prejudice should be presumed." State Ex. G3 at 8. His case does not resemble <u>Fisher v. Roe</u>, 263 F.3d 906, 915 (9th Cir. 2001). There, neither the defendants nor their counsel were present either for a read-back of trial testimony or when the judge decided how to handle the jury's question. None of Godfrey's pleadings in the Montana Supreme Court and none of his filings here suggest that his personal presence, in addition to his

counsel's, would have made the procedure of responding to the jury's questions more fair.  Claim E1 should be denied.

**F. Claim E2**

Except in the situation described in <u>Anders v. California</u>, 386 U.S. 738, 744 (1967), federal constitutional law does not require a court to accept pro se filings from a person who is represented by counsel.  Claim E2 should be denied.

## IV. Certificate of Appealability

### A. Governing Law

"A certificate of appealability ["COA"] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c); <u>Hohn v. United States</u>, 524 U.S. 236 (1998); <u>Lambright v. Stewart</u>, 220 F.3d 1022, 1024 (9th Cir. 2000).  Godfrey "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000), or that "the questions are 'adequate to deserve encouragement to proceed further,'" <u>Lozada v. Deeds</u>, 498 U.S. 430, 432 (1991) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

### B. Discussion

Claim A1 fails to allege a constitutional violation under <u>Miranda v. Arizona</u>

and its progeny because the prosecutor did not suggest to the jury that Godfrey failed to respond to questioning by government agents. Claim A2 alleges ineffective assistance of counsel based on counsel's failure to object under <u>Miranda</u>, but neither federal nor state law supported an objection. There is no legal basis for disagreement about these claims. A COA is not warranted.

Claim B2 is aimed at appellate counsel, who had no opportunity to develop evidence supporting a characterization of the jury as "inattentive." The trial record is as consistent with an extremely attentive and careful jury as with an inattentive one. A COA is not warranted.

Claim C is frivolous because it alleges "suppression" by the prosecution of an interview attended by defense counsel and a defense investigator. A COA is not warranted.

Claim D2 alleges ineffective assistance of counsel because counsel did not ask at trial the same question that prompted the victim, in a pretrial interview, to say, "I probably am wrong" about the October 1999 incident. The claim is not procedurally defaulted, because the purported default could only be based on the Montana Supreme Court's dismissal of the claim on the grounds that it was not supported by an affidavit of the people alleged to be ineffective. That ruling is not adequate to bar

federal review. But a careful consideration of the trial evidence, in light of the elements of the offenses the State had to establish, shows that Godfrey did not stand to benefit from the victim's alleged statement. Her remark might have made a difference in the jury's consideration of attempted rape versus the lesser offense of sexual assault, but Godfrey was convicted of sexual assault, not attempted rape. There is no reasonable probability – not even a possibility – that the jury would have found Godfrey did not *touch* the victim if her remark had been introduced. He said he did. Counsel's failure to elicit the remark did not cause any prejudice to Godfrey. Although the claim requires scrutiny, there is no factual basis for disagreement. A COA is not warranted.

Claim E1 alleges that Godfrey had a right to be present in person, not merely through counsel, to respond to the jury's questions. He has failed to identify, in this Court or in state court, any respect in which his personal presence would have made the proceeding more fair. In fact, in state postconviction proceedings, he argued only that prejudice must be presumed. A COA is not warranted.

Claim E2 is frivolous. Federal law does not require state courts to accept pro se filings from persons who are represented by counsel except under the special circumstances of <u>Anders v. California</u>, and that was not the situation here.

There is no reason to encourage further proceedings in this case. A COA should be denied as to all issues.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. Claims A1, A2, B2, C, D2, E1, and E2 should be DENIED on the merits.

2. A certificate of appealability should be DENIED as to these claims.

3. If the district court accepts this Findings and Recommendation in full and the Findings and Recommendation addressing Claims B1, D1, F, and G, the Clerk of Court should be directed to enter a judgment in favor of Respondents and against Petitioner on all claims.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely

file written objections may bar a de novo determination by the district judge.

Godfrey must immediately inform the Court and the State's counsel of any change in his mailing address. Failure to do so may result in dismissal of his case without notice to him.

DATED this  24th  day of November, 2009.

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge